Edward J. ANDERSON, individually and as parent and natural guardian of Trevor Anderson, a minor, Respondent,

v.

ANOKA HENNEPIN INDEPENDENT SCHOOL DISTRICT 11, et al., Appellants.

No. C0–02–1125.

Court of Appeals of Minnesota.

Jan. 28, 2003.

Lawrence M. Rocheford, Jessica E. Schwie, Jardine, Logan & O'Brien, P.L.L.P., Lake Elmo, for appellants.

Robert N. Edwards, Robert N. Edwards, Chtd., Anoka, for respondent.

Considered and decided by STONEBURNER, Presiding Judge, G. BARRY ANDERSON, Judge, and WRIGHT, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Respondent's son was injured when he reached into a table saw to remove a loose piece of scrap wood in a high-school woodworking class. At the time of the injury, respondent's son was operating the saw without a blade guard, as his teacher, Paul Peterson, had instructed him. Respondent sued Anoka–Hennepin Independent School District 11 (the district) and Paul Peterson (Peterson) (collectively, appellants) for negligence. Appellants moved for summary judgment, claiming statutory, official, and vicarious official immunity. The district court denied the motion for summary judgment on all grounds. Appellants argue that: (1) the district is immune under Minn.Stat. § 466.03, subd. 6 (2002); (2) Peterson is entitled to common-law official immunity; and (3) the district is entitled to vicarious common-law official immunity. Because we conclude that appellants have failed to demonstrate that statutory, official, or vicarious official immunity applies, we affirm.

## FACTS

On May 16, 2000, 16–year–old Trevor Anderson reached into a table saw as he was cutting one and one-half-inch-wide strips of wood to be used in the construction of a TV/VCR cabinet and amputated his left index finger at the first knuckle. The accident occurred during appellant Paul Peterson's Woods II shop class at Coon Rapids Senior High School. The table saw was equipped with an aftermarket blade guard, but Anderson did not use the guard while cutting the strips because Peterson had instructed the class to put the guard up when ripping [1] strips of wood

smaller than four inches. Anderson was injured when he reached into the saw's blade area to remove a loose piece of wood.

Respondent Trevor Anderson's father filed suit on his son's behalf, alleging that the district and Peterson negligently failed to provide a safe environment and negligently failed to supervise Trevor Anderson. Appellants filed a motion for summary judgment, asserting that either statutory immunity under Minn.Stat. § 466.03, subd. 6, or common-law official immunity shields the district and Peterson from liability. The district court denied appellants' motion for summary judgment, and this appeal followed.

## ISSUES

I. Did the district court err by concluding that appellant school district was not entitled to statutory immunity?

II. Did the district court properly conclude that appellant Paul Peterson was not entitled to official immunity?

III. Did the district court err by concluding that vicarious official immunity does not protect appellant school district?

## ANALYSIS

On appeal from summary judgment, this court must determine whether there are any genuine issues of fact and whether the district court erred in its application of the law. *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 315 (Minn. 1998). A summary-judgment order denying an immunity defense is appealable because immunity from suit is lost if a case is erroneously allowed to go to trial. *McGowan v. Our Savior's Lutheran Church*, 527 N.W.2d 830, 832 (Minn.1995).

---

**1.** To "rip" a board means "[t]o split or saw (wood) along the grain." *The American Heri-* *tage Dictionary* 1177 (3d. ed.2000).

The applicability of immunity is a question of law, which this court reviews de novo. *Johnson v. State,* 553 N.W.2d 40, 45 (Minn. 1996).

The party asserting immunity has the burden of showing particular facts that demonstrate it is entitled to immunity. *Fear v. Indep. Sch. Dist. 911,* 634 N.W.2d 204, 209 (Minn.App.2001). When reviewing a denial of summary judgment based on a claim of immunity, we presume "the truth of the facts alleged by the nonmoving party." *Id.* (citation omitted).

I. Statutory Immunity

The district first asserts that it is immune from liability for Trevor Anderson's injury under the doctrine of statutory immunity.[2] Under statutory immunity, state officials and employees are immune from claims arising out of the performance of discretionary duties, but may be liable for ministerial actions. Minn.Stat. § 466.03, subd. 6 (2002);[3] *Larson v. Indep. Sch. Dist. No. 314, Braham,* 289 N.W.2d 112, 119 (Minn.1979). In defining what constitutes a discretionary act, the Minnesota Supreme Court distinguishes between "operational" and "planning" decisions. *Larson,* 289 N.W.2d at 120. Planning decisions involve issues of public policy and are protected discretionary decisions. *Fear,* 634 N.W.2d at 210. Operational decisions relate to the day-to-day functioning of government and are not protected. *Id.*

We must first ascertain the nature of the governmental conduct that respondent challenges and determine whether it is a planning decision and thus appropriate for immunity. *Larson,* 289 N.W.2d at 120. "The critical inquiry is whether the conduct involved a balancing of policy objectives." *Fear,* 634 N.W.2d at 210 (quotation omitted). The government action challenged here is the Woods II class rule that prohibited Trevor Anderson from utilizing the blade guard when ripping boards one-and one-half inches in width.

The district argues that the instruction regarding the use of the guard was a policy-level decision entitled to immunity. The district claims that the staff in the Technology Education Department at Coon Rapids High School weighed alternative practices and concluded that using the guard could pose an additional risk because students' fingers could get closer than four inches to the blade.

In order for the district to be immune, it must meet its burden of establishing that the conduct challenged by respondent was of a "public policy-making nature involving social, political, or economical considerations." *S.W. v. Spring Lake Park Sch. Dist. No. 16,* 580 N.W.2d 19, 22 (Minn.1998). The enforcement and creation of a safety rule for a table saw does not rise to the level of a "social," "political," or "economic" consideration. Appellants do not argue that social or political considerations went into the decision not to use the guard. The decision not to use the guard also was not based on economic considerations. After the district purchased an additional guard not included with the table saw, the district did not need to spend anything more to engage

**2.** We refer to immunity under Minn.Stat. § 466.03, subd. 6 (2002), as "statutory immunity," although some earlier cases refer to it as "discretionary immunity." *Angell v. Hennepin County Reg'l Rail Auth.,* 578 N.W.2d 343, 345 n. 2 (Minn.1998).

**3.** Minn.Stat. § 466.03, subd. 1 (2002), excludes liability to every municipality. Subdivision 6 states an exception for "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn.Stat. § 466.03, subd. 6.

that guard for all procedures. The decision regarding the use of the blade guard was based on practical, day-to-day operational considerations in Peterson's classroom.

The most applicable Minnesota decision relating to immunity for a schoolteacher is also consistent with our holding. In *Larson*, an eighth-grader was injured while attempting to perform a gymnastic exercise. *Larson*, 289 N.W.2d at 115. The plaintiff alleged that the teacher was negligent in providing support to the plaintiff while doing a "headspring over a rolled mat." *Id.* The teacher claimed statutory immunity protected him from liability because the method of teaching the headspring involved a policy-level decision. *Id.* at 119. The supreme court disagreed, holding that the decision to spot the headspring in the manner chosen clearly was a ministerial activity not entitled to immunity. *Id.* at 120. The court held that although the teacher used judgment in deciding how to spot the gymnastic exercise, this alone did not establish that he performed a discretionary duty entitled to immunity:

> While it may be a policy-level decision whether a teacher will be required to teach gymnastics or the headspring over a rolled mat, the actual teaching is a ministerial function because it involves decisions made at the operational level of conduct.

*Id.* at 121.

It is at least arguable that offering a Woods II class or establishing class curriculum that includes construction of a TV/VCR cabinet is a policy-level decision entitled to statutory immunity. The actual classroom instruction here, however, including the method of using the materials and tools to construct the cabinet, is a ministerial function involving decisions made at the operational level by the individual teacher.

■■■ The purpose of statutory immunity also supports our conclusion. The underlying "purpose of statutory immunity is to protect government entities from having the judiciary second-guess the important public policy decisions they are required to make." *S.W.*, 580 N.W.2d at 23. The discretionary-function exception thus addresses separation-of-powers concerns by preventing lawsuits from "becoming a vehicle for judicial interference with executive and legislative policymaking." *Terwilliger v. Hennepin County*, 561 N.W.2d 909, 912 (Minn.1997) (quotation omitted). The legislature did not intend the exception for discretionary acts to "swallow the general rule" of liability for public officials negligently performing government operations. *Id.* Therefore, statutory immunity is narrowly construed. *Id.; Larson*, 289 N.W.2d at 121.

The determination not to use a blade guard for cuts under four inches is not an important public-policy decision protected by Minn.Stat. § 466.03. The narrow interpretation of statutory immunity and its overall purpose lead to the conclusion that the district court properly refused to apply such immunity to appellants' actions.

## II. Official Immunity

Appellants argue that the doctrine of common-law official immunity protects appellant Peterson from liability for negligently supervising Trevor Anderson and for permitting Anderson to use the table saw without the blade guard in place.

■■■ Official immunity protects a public official charged by law with duties involving judgment or discretion from personal liability unless the official acts willfully or maliciously. *Elwood v. Rice County*, 423 N.W.2d 671, 677 (Minn.1988).

"Whether actions of government officials are protected by official immunity is a question of law." *Fear,* 634 N.W.2d at 215.

Although the distinction between statutory and official immunity is not always clear, the discretionary acts protected by each doctrine are not identical and the acts serve different purposes. As mentioned, statutory immunity preserves the separation of powers, while official immunity primarily is "intended to insure that the threat of potential liability does not unduly inhibit the exercise of discretion required of public officers in the discharge of their duties." *Rico v. State,* 472 N.W.2d 100, 107 (Minn.1991) (quotation omitted). Thus, discretion has a broader meaning in the context of official immunity. *Id.*

Courts distinguish between discretionary duties afforded immunity and ministerial duties for which officials remain liable. *Id.* Because only discretionary decisions are immune from suit, it is critical to determine whether Peterson's actions were discretionary or ministerial. *Huttner v. State,* 637 N.W.2d 278, 284 (Minn. App.2001), *review denied* (Minn. Nov. 13, 2001). An official's duty is ministerial "when it is absolute, certain and imperative, involving merely execution of a specific duty arising from fixed and designated facts." *Rico,* 472 N.W.2d at 106 (quotation omitted).

Appellants claim that Peterson's actions were discretionary because he was required to balance several factors in supervising Trevor Anderson's use of the table saw. Peterson watched while Anderson ripped four to five one and one-half-inch-wide strips of wood using a push stick and with the blade guard disengaged. Appellants claim that Peterson then justifiably moved to another area of the classroom to supervise some of the other twenty-five students in the classroom.

Determining what acts are ministerial is often difficult, and the distinction is subject to "enigmatic application and occasional breakdown." *Larson,* 289 N.W.2d at 120. In *Williamson v. Cain,* the supreme court held that state employees did not perform a discretionary act when they removed an abandoned house with a tractor. *Williamson v. Cain,* 310 Minn. 59, 61, 245 N.W.2d 242, 244 (1976). The employees' job was "simple and direct" and "[w]hile they undoubtedly had to make certain decisions in doing that job, the nature, quality and complexity of their decision-making process" did not entitle them to official immunity. *Id.* In *Huttner,* this court held that official immunity was not available to protect a social worker who failed to ensure that a patient took his medication. 637 N.W.2d at 285. When that patient later committed a murder, this court stated that the official's failure to comply with a statutory duty to monitor the patient's treatment plan (1) did not require the exercise of any discretion, (2) was ministerial, and (3) was not entitled to the protection of official immunity. *Id.*

Here, rather than exercising policy-making power, appellant Paul Peterson only carried out ministerial functions. Although Peterson exercised independent judgment by deciding how to supervise his classroom and whether to use the blade guard, these are not the type of discretionary decisions afforded immunity. The exercise of some level of discretion or judgment will not necessarily confer immunity. Rather, "the crucial focus is upon the nature of the act." *Terwilliger,* 561 N.W.2d at 913 (quotation omitted).

Although Peterson balanced many different factors in supervising the Woods II classroom, Peterson did not exercise any more discretion then any other teacher in

controlling a classroom—the essence of a ministerial action. Similar to the state employees' removal of a house in *Williamson*, Peterson's teaching duties with regards to safety were direct and did not involve policy decisions with broad implications. *See Williamson*, 310 Minn. at 61, 245 N.W.2d at 244 (holding state employees' removal of a house was a "simple and definite" job not entitling them to immunity). He was instructing and assisting students in the construction of TV/VCR cabinets. While Peterson necessarily made decisions on how best to perform those responsibilities, the nature and complexity of that decision-making process does not entitle him to official immunity.

Respondent also argues official immunity does not protect Peterson because his actions were willful or malicious. The official-immunity doctrine does not protect government officers who commit willful or malicious acts. *Rico*, 472 N.W.2d at 107. Malice is defined as the "intentional doing of a wrongful act without legal justification or excuse, or otherwise stated, the willful violation of a known right." *Id.* (citing *Carnes v. St. Paul Union Stockyards Co.*, 164 Minn. 457, 462, 205 N.W. 630, 631 (1925)).

While we leave for another day the question of whether or not instructor Peterson's actions were negligent, given the record before us, the suggestion that those actions were somehow willful or malicious borders on the ridiculous. But because we hold that official immunity does not apply here, we need not consider this issue further.

III. Vicarious Immunity

Finally, appellants argue that the official immunity they claim shields Peterson from liability should also vicariously extend to the district. Appellants assert public policy favors immunizing the district from liability for Trevor Anderson's injuries and therefore, the district court erred by failing to apply vicarious immunity. Because we conclude that official immunity does not protect Peterson, immunity also will not vicariously extend to the district. *See Terwilliger*, 561 N.W.2d at 913 ("[i]f a public official is entitled to official immunity, his or her employer may be vicariously immune.").

**DECISION**

The judgment utilized by Peterson in determining how best to teach students to safely use woodworking machinery is not entitled to protection under the doctrine of statutory immunity. The instruction by a teacher of safety techniques in using woodworking machinery is a ministerial act not entitled to official immunity. The district is not vicariously immune because common-law official immunity does not protect Peterson from liability.

**Affirmed.**