Katherine A. IRELAND,
et al., Respondents,

v.

CROW'S NEST YACHTS, INCORPORATED, Gernot Bernhard Lengsfeld, et al., Respondents.

Gernot Bernhard LENGSFELD, et al., Defendants and Third-Party Plaintiffs, Respondents,

v.

COUNTY OF CARVER, Third–Party Defendant, Appellant.

No. CX–96–19.

Court of Appeals of Minnesota.

July 30, 1996.

Review Denied Sept. 20, 1996.

Sharon L. Van Dyck, James R. Schwebel, Schwebel, Goetz, Sieben & Moskal, P.A., Minneapolis, for Respondents Katherine A. Ireland, et al.

James W. Reuter, Lindquist & Vennum, P.L.L.P., Minneapolis, for Respondent Crow's Nest Yachts, Incorporated.

David D. Alsop, Laura L. Myslis, Gislason, Dosland, Hunter & Malecki, P.L.L.P., Minnetonka, for Respondents Gernot Bernhard Lengsfeld, et al.

Stephen G. Andersen, Joseph J. Langel, Ratwik, Roszak & Maloney, P.A., Minneapolis, for Appellant.

Considered and decided by KLAPHAKE, P.J., and SCHUMACHER, and SCHULTZ, JJ.*

## OPINION

SCHUMACHER, Judge.

Carver County appeals from the denial of its motion for summary judgment in a wrongful death action arising out of an automobile accident that occurred at an intersection of a county road and a state highway. Because we conclude that Carver County is entitled to vicarious official immunity for the claimed negligence of the county's traffic engineer in installing traffic control devices, we reverse.

## FACTS

This action arises out of an automobile accident at the intersection of County State Aid Highway 10 (County 10) and Trunk Highway 7. Christopher R. Ireland, the driver of one of two trucks involved in the accident, approached the intersection from the west on Highway 7. At the same time, respondent Gernot Bernhard Lengsfeld, the driver of the second truck, was driving south toward the intersection on County 10. A stop sign faced Lengsfeld on his right-hand side. Lengsfeld did not stop at the sign and struck the Ireland truck as it entered the intersection. Ireland died in the collision.

Lengsfeld claims not to have seen the stop sign. He also maintains that he did not see a "stop ahead" sign that was posted on County 10. The "stop ahead" sign was posted 750 feet to the north of the stop sign. It was not accompanied by a plaque indicating that distance. Lengsfeld further claims not to have heard or felt a set of rumble strips 1,035 feet north of the stop sign or a second set of rumble strips 485 feet from the sign.

The last warning sign that Lengsfeld remembers observing before the accident was a curve-to-right sign posted 1,470 feet before the intersection. The sign depicting the curve was not accompanied by a speed advisory plate. The posted speed limit on that section of County 10 was 55 miles per hour. It is undisputed that the maximum recommended speed on that curve is 45 to 50 miles per hour.

Following the accident, respondents Katherine A. Ireland and Sarah Mortag, as Co–Trustees for the Next–of–Kin of Christopher R. Ireland, deceased (collectively Ireland), brought this wrongful death action against Lengsfeld; his business, respondent Crow's Nest Yachts, Incorporated; and his wife, respondent Brunhelde Margarta Lengsfeld, who owned the truck (collectively Lengsfelds). The original complaint alleged that Lengsfeld had been driving at an excessive rate of speed and had failed to stop at the stop sign.

Gernot and Brunhelde Lengsfeld subsequently filed a third-party complaint against Carver County, alleging that Carver County was negligent in the installation of warning signs and rumble strips on the north side of the intersection. Ireland then amended their complaint to assert a direct claim against Carver County, based on similar allegations.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

pointment pursuant to Minn. Const. art. VI, § 10.

Carver County asserted the defenses of vicarious official immunity and discretionary immunity and moved for summary judgment. The district court denied Carver County's motion, and this appeal followed.

## ISSUES

1. Does the doctrine of vicarious official immunity shield Carver County from liability for a claim that Carver County negligently failed to install a speed advisory plate beneath a curve warning sign on the county road?

2. Does vicarious official immunity protect Carver County against a claim alleging the negligent placement of a "stop ahead" sign?

3. Does vicarious official immunity shield Carver County from liability for a claim that Carver County negligently failed to place a distance plaque below a "stop ahead" sign?

4. Does vicarious official immunity protect Carver County against a claim alleging negligence in the repair or alteration of rumble strips?

## ANALYSIS

In an appeal involving summary judgment, the reviewing court determines (1) whether there are any genuine issues of material fact, and (2) whether the lower court erred in applying the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). Whether an immunity defense applies is a question of law, *Elwood v. County of Rice,* 423 N.W.2d 671, 675 (Minn.1988), which the reviewing court considers without deference to the decision of the district court. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

Official immunity applies to the negligent acts of a public official performing duties that call for the exercise of judgment or discretion. *Elwood,* 423 N.W.2d at 677. The doctrine does not provide immunity for ministerial acts. *Williamson v. Cain,* 310 Minn. 59, 61, 245 N.W.2d 242, 244 (1976). Unprotected ministerial acts are "absolute,

certain and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *Cook v. Trovatten,* 200 Minn. 221, 224, 274 N.W. 165, 167 (1937).

The purpose of official immunity is to protect public officials "from the fear of personal liability that might deter independent action and impair effective performance of their duties." *Elwood,* 423 N.W.2d at 678. In order to avoid defeating this purpose in cases where a claimant brings suit against the governmental employer claiming negligence against a public official, the supreme court has recognized the doctrine of vicarious official immunity. *Pletan v. Gaines,* 494 N.W.2d 38, 42 (Minn.1992). The decision of whether to extend official immunity to a public employer is a policy question. *Id.* The relevant inquiry is whether, if no immunity were granted, the public employee would think that his performance was being evaluated so as to "chill" the exercise of his independent judgment. *Leonzal v. Grogan,* 516 N.W.2d 210, 214 (Minn.App.1994), *review denied* (Minn. July 27, 1994).

1. Carver County asserts the defense of vicarious official immunity against the claim that its traffic engineer negligently failed to post an advisory speed plate before the curve on the southbound approach to the intersection of County 10 and Highway 7.

Carver County contends that the Minnesota Manual on Uniform Traffic Control Devices (the manual)[1] supports its assertion of official immunity. For example, a provision on advisory speed plates, states that they "may be used in conjunction with any standard yellow warning sign to indicate the maximum recommended speed around a curve." 1991 Minnesota Manual on Uniform Traffic Control Devices, (MNDOT) 2C–35 (repromulgating language adopted in 1986; current version promulgated in 1995). A provision on curve signs suggests that "[a]dditional protection may be provided by use of the Advisory Speed plate." MMUTCD, 2C–5 (Mar.1986). Carver County argues that the use of the permissive word "may" in

---

1. The Minnesota Manual on Uniform Traffic Control Devices is a manual adopted by the Commissioner of the Department of Transportation pursuant to Minn.Stat. § 169.06, subd. 1 (1994), for the purpose of establishing a uniform system of traffic control devices.

these provisions indicates that the decision whether to use an advisory speed plate is discretionary with the traffic engineer responsible for placing such signs.[2]

■ Ireland and Lengsfelds do not dispute Carver County's assertion that, under the manual, Carver County traffic engineer's decision not to place an advisory speed plate for the curve was discretionary. While Ireland and Lengsfelds concede that the traffic engineer may enjoy official immunity for the decision, they maintain that such immunity should not extend vicariously to Carver County. We disagree.

■ To impose liability on the employer here would require a court to review the immunized employee's decision not to place a sign at a location that he judged to be inappropriate after he had evaluated other conditions on the road. Under these circumstances, review of the employee's conduct by the judiciary would defeat the purpose of official immunity, which is to shield the exercise of public officers' independent judgments from civil adjudication. *Pletan,* 494 N.W.2d at 42. The advisory speed plate decision at issue here is, therefore, a decision for which we conclude that Carver County is entitled to vicarious immunity.

■ 2. Carver County next argues that official immunity should also apply to the decision to place the "stop ahead" sign beyond the 450–foot minimum distance suggested the manual. MMUTCD, 2C–3, at Table II–1 (Jan.1993). The "stop ahead" sign on County 10 is located 750 feet from the stop sign. While the manual provides a suggested minimum distance for such a warning sign, it states that the suggestion is "for guidance purposes and should be applied with engineering judgment." MMUTCD, 2C–3 (Jan.1993).

The Carver County traffic engineer's explanation for the placement of the "stop ahead" sign demonstrates the exercise of judgment. He maintained that the "stop ahead sign was installed at 750 feet [from the

stop sign] because that put the sign on a straight section of road, whereas installing it at the minimum 450 feet would have put the sign on the curve." He reasoned that "[h]aving the sign on a straight section of road increased its visibility to motorists."

Ireland and Lengsfelds do not dispute that the "stop ahead" sign placement decision, like the advisory speed plate decision, was a discretionary act of Carver County's traffic engineer, entitling him to official immunity. We agree and also conclude that this immunity extends vicariously to the county. Vicarious official immunity is required to avoid the chilling effect that would otherwise result if the traffic engineer's decision in placing "stop ahead" signs could subject the county to liability. *Pletan,* 494 N.W.2d at 42.

3. Carver County contends that it is entitled to vicarious official immunity for the decision not to place a distance plaque below the "stop ahead" sign on County 10.

■ At the time of the accident in August 1994 the manual provided that distance plaques "shall be used" with warning signs installed in advance of intersections. MMUTCD, 2C–40.4 (Feb.1991). Ireland and Lengsfelds argue that, because of the mandatory language in this provision, any decision to install a distance plaque must be ministerial and thus unprotected by official immunity.

Carver County maintains that the use of mandatory language in the provision did not accurately reflect the intent of the manual drafters to leave the decision of distance plaque installation to the discretion of traffic engineers. Carver County contends that a mandatory requirement of distance plaques for all warning signs is inconsistent with other contents of the manual. *See, e.g.,* MMUTCD, 2C–3, at Table II–1, n.2 (Jan. 1993) (distance plaques "should" be used in urban areas); Figure 2–5 (Jan.1993) (showing diagrams of the "[t]ypical application of warning signs," none of which depict distance plaques).

---

2. An introductory provision of the manual explains that the word "may" denotes a permissive condition when used to describe the design or application of particular traffic control devices.

By contrast, "shall" indicates a mandatory condition, and "should" signals an advisory condition. MMUTCD, 1A–5 (Feb.1991).

Since discovering the alleged drafting error after the Lengsfeld–Ireland collision, the Minnesota Department of Transportation has amended the primary manual provision on distance plaques, substituting the phrase "may be used" for the mandatory language. MMUTCD, 2C–40.4 (Jan.1995). In any event, even while the mandatory language was in effect, officials from around the state claim to have regularly installed distance plaques on a discretionary basis.

We disagree with Ireland and Lengsfelds' underlying assumption that the use of "shall" in the manual necessarily creates a ministerial duty. An introductory provision states that

> the Manual is not a substitute for engineering judgment. It is the intent that the provisions of this Manual be standards for traffic control devices installation, but not a legal requirement for installation.
>
> Qualified engineers are needed to exercise the engineering judgment inherent in the selection of traffic control devices, just as they are needed to locate and design the roads and streets which the devices complement.

MMUTCD, 1A–4 (Feb.1991).

In light of the manual's express deference to the judgment of engineers in installing traffic control devices, we conclude that the decision of the Carver County traffic engineer not to install the distance plaque was a discretionary decision entitled to official immunity. Official immunity is required in order to avoid chilling the traffic engineer's exercise of his independent professional judgment. Again, this immunity also extends vicariously to Carver County in order to avoid subjecting the immune traffic engineer's conduct to review through litigation, a consequence that the doctrine of official immunity seeks to avoid. *Pletan,* 494 N.W.2d at 42.

4. Finally, Carver County argues that it is entitled to vicarious official immunity for the decision to fill the two sets of rumble strips on County 10 to a depth of one-quarter of an inch in July 1994, following a telephone call from a resident in the area. The caller complained about the noise of cars driving over a set of rumble strips on the south side of the County 10 intersection with Highway 7. The caller also stated that the strips caused motorists to swerve over the centerline in order to avoid the strips and caused covers to come off of wheels.

Ireland and Lengsfelds argue that Carver County's maintenance of the rumble strips involves a nonimmune ministerial act, because Carver County has usually followed the general practice of initially cutting rumble strips to a depth of between one-half and three-quarters of an inch.[3] It is undisputed, however, that Carver County does not have any "set specifications" regarding the repair or maintenance of rumble strips. Rather, Carver County allows its traffic engineer to use his own judgment "based on visually inspecting the strips and driving over them to determine whether the strips and pavement need repair and the 'rumble' is adequate." These "guidelines" demonstrate that the decision regarding the rumble strips was a nonministerial act for which the traffic engineer should enjoy official immunity.

Carver County is also entitled to vicarious official immunity for this decision. Again, vicarious official immunity serves to avoid chilling the traffic engineer's exercise of his independent judgment by allowing him to act without fearing that his conduct may eventually be subject to review by the judiciary and may expose his employer to civil liability. *Pletan,* 494 N.W.2d at 42.

The doctrine of vicarious official immunity will not shield a governmental entity from liability for the willful or malicious conduct of its employees. *Elwood,* 423 N.W.2d at 677. Because Ireland and Lengsfelds have not alleged that any of Carver County's employees engaged in willful or malicious acts, vicarious official immunity provides Carver County with immunity in this case. Thus, we do not reach Carver County's alternative defense of discretionary immunity.

---

**3.** Carver County adopted this practice independently. The manual does not contain any provisions governing the use of rumble strips.

## DECISION

Because we conclude that Carver County is entitled to vicarious official immunity for the allegedly negligent decisions of its traffic engineer in the installation of traffic control devices on County 10, we reverse the district court's denial of summary judgment.

**Reversed.**