**Jeffrey Scott RIEDEL, et al., Respondents,**

v.

**Steven Neal GOODWIN, Respondent.**

**BURLEENE TOWNSHIP, defendant and third-party plaintiff, Appellant,**

v.

**TODD COUNTY, third-party defendant, Appellant.**

**Savanna Ashley RIEDEL, a minor, By and Through her mother and natural guardian, Teresa RIEDEL; et al., Respondents,**

v.

**Jeffrey Scott RIEDEL, Respondent,**

**Burleene Township, Todd County, Appellants,**

**Steven Neal Goodwin, Respondent.**

No. C7–97–1476.

Court of Appeals of Minnesota.

Feb. 24, 1998.

Review Denied April 30, 1998.

John Lervick, Swenson, Lervick, Syverson & Anderson, Alexandria, for respondent Jeffrey Riedel.

Michael LaFleur, William Strait, Corrick & Sondrall, P.A., Brooklyn Park, for respondents Jeffrey and Teresa Riedel.

Gary Hoch, Joseph W.E. Schmitt, Alana K. Bassin, Meagher & Geer, P.L.L.P., Minneapolis, for respondent Steven Goodwin.

Gordon Hansmeier, Rajkowski Hansmeier, Ltd., St. Cloud, for appellant Burleene Township.

Thomas P. Carlson, Bergstrom, Carlson & Soldo, P.L.L.P., St. Paul, for appellant Todd County.

Mark C. Hart, Milavetz, Gallop & Milavetz, P.A., Brooklyn Center, for respondents Savanna and Teresa Riedel.

Jamie Dahlen, St. Paul, for amicus curiae Association of Minnesota Counties.

Considered and decided by RANDALL, P.J., and TOUSSAINT, C.J., and HOLTAN, J.

## OPINION

HARVEY A. HOLTAN, Judge.*

Appellants Burleene Township and Todd County appeal from adverse summary judgment in a suit arising out of a two-car automobile accident at the intersection of a township and county road. The accident occurred between Jeffrey Riedel, et al., and Steven Goodwin. The district court held that the township and county were not entitled to statutory or official immunity. We reverse on statutory immunity and affirm on official immunity. In addition, the district court certified two questions on the government's underlying duty regarding roadside vegetation. The certified questions are not properly before the court and thus, we do not reach them. We remand for further proceedings between the respondents.

## FACTS

This litigation stems from an August 10, 1993, two-car accident at the intersection of Todd County Road 71 and Burleene Township Road T–390. Respondent Riedel's vehicle was on the township road, and respondent Goodwin's vehicle was on the county road. Goodwin broadsided Riedel in the intersection. The township road was controlled by stop signs where it intersected the county road. The county road was a through road with no stop signs at the intersection in question. Both roads are graveled, designated as low-volume, and serve a rural area that is mostly farmland. The land surrounding this right-angle intersection is flat. The township and county are alleged to be liable because they did not cut tall weeds that impaired both drivers' views of traffic on the intersecting roadway. All parties agree, however, that the stop sign on the township road was unobstructed.

In 1993, the county's mowing policy required that it attempt to make at least one cut along county roads by the first week of July. Bad weather and equipment failure, however, sometimes altered the mowing schedule. The county's policy required high-volume roads to be cut first, with low-volume roads being cut as time permitted. County employees were instructed to make mowing decisions based on the cost of cutting sight triangles.

In 1993, the county had four tractor-mowers and over 600 miles of road. A county employee testified that the county "never ever" cut sight lines on township roads because county employees "have all [they] can do to cut noxious weeds." In the summer of 1993, a county employee attempted to mow the intersection but culvert construction on County Road 71 prevented him from reaching it. He then mowed other roads and the accident occurred before he could return to the intersection.

In 1993, the township had three supervisors. The supervisors or the clerk did the township mowing. The township itself did not own mowing equipment but instead used one of the supervisor's sickle-mowers. The township attempted to mow on an annual basis, usually in the fall before the snow fell and before school started. Under township laws, mowing was not required, but was done to prevent tall weeds from catching snow and

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

to allow better visibility of deer. When the township inspected roads, it looked for obstructions like trees that interfered with the view of traffic control signs. It did not mow grass during the summer for sight distance purposes.

Riedel sued Goodwin after the accident and the township and county were brought into the suit. The township and county moved the court for immunity-based summary judgments. Their motions were denied and they now appeal.

## ISSUES

I.   Did the district court err when it determined statutory immunity did not apply to the county or the township?

II.   Did the district court err when it determined official immunity did not apply to the county or the township?

III.   Did the district court properly certify questions to this court?

## ANALYSIS

■■■   An appellate court reviews the denial of an immunity-based motion for summary judgment de novo "because immunity from suit is effectively lost if a case is erroneously permitted to go to trial." *Watson by Hanson v. Metropolitan Transit Comm'n*, 553 N.W.2d 406, 411 (Minn.1996). Where facts are established, whether governmental action is protected by immunity is a question of law. *Zank v. Larson*, 552 N.W.2d 719, 721 (Minn.1996). On appeal from summary judgment, we determine whether genuine issues of material fact exist and whether the district court erred in its application of the law. *Watson*, 553 N.W.2d at 411.

### I.

■■■   We first address whether the township and county were protected by statutory immunity. Minnesota's Tort Claims Act allows the state and its municipalities to be held liable for their torts subject to certain exceptions and limitations. *Id.* at 412. The statutory or discretionary function exception protects a municipality and its employees for "failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn.Stat. §§ 466.02,

.03, subd. 6 (1996). Additionally, the supreme court has held that:

> Statutory immunity exists to prevent the courts from conducting an after-the-fact review which second-guesses "certain policy-making activities that are legislative or executive in nature." *Nusbaum v. Blue Earth County*, 422 N.W.2d 713, 718 (Minn. 1988). If a governmental decision involves the type of political, social and economic considerations that lie at the center of discretionary action, including consideration of safety issues, financial burdens, and possible legal consequences, it is not the role of the courts to second-guess such policy decisions. *Steinke v. City of Andover*, 525 N.W.2d 173, 176 (Minn.1994).

*Watson*, 553 N.W.2d at 412. Courts must examine the precise governmental conduct at issue to decide if statutory immunity applies. *Steinke*, 525 N.W.2d at 175.

The precise government conduct at issue here is (1) the township and county's decisions to not cut a sight triangle at the intersection, and (2) the township and county's failure to mow the intersection before the accident.

The township is entitled to statutory immunity on the sight triangle issue. The record indicates that the township mows once per year to reduce snow accumulation and to provide better visibility of deer. While the township inspects roads for sight distance and obstructions, it is looking for obstructed signs, *not* tall grass at intersections. The township mowing policy specifically does not include mowing sight triangles at intersections.

■■■   The township's creation of its mowing, inspection, and sight-distance policy is the type of conduct that the legislature intended to remove from the judicial sphere because it involves the balancing of safety and economic considerations. *See Watson*, 553 N.W.2d at 412 (holding that safety issues and financial burdens lie at the center of discretionary policy decisions). The record is clear that the township has limited resources and that it needed to balance limited resources with safety considerations in arriving at its annual mowing policy.[1] This court

---

1.   While the township provided no direct evi-      dence of how it developed its mowing policy, the

will not review a governmental entity's conduct where to do so would be tantamount to second-guessing its policy decision. *Id.* (holding plaintiff's attack on bus company's security and training provisions was attack on protected policy decision); *see also Pletan v. Gaines,* 494 N.W.2d 38, 44 (Minn.1992) (holding that where complaint was centered on school's policy of making children responsible for boarding bus, plaintiff was asking court to reexamine protected planning decision). Statutory immunity applies to the township's sight triangle policy.

Similarly, the county's decision not to cut sight triangles is also protected by statutory immunity because, due to limited financial resources, the county prioritized which roads would receive sight triangle cutting and the intersection in question was not mowed because it was deemed a low-volume, low priority road. One county employee testified that:

> We only have X number of dollars to spend for mowing operations. If my funds are unlimited, you might not see a tree or a blade of grass or a hill in a road or a curve in the road if we had unlimited funds. * * * [I]f a person is going to spend all his money just cutting intersections, all of them in Todd County, nothing else would get done.

Another employee indicated that the county rarely cut sight triangles on low-volume roads because it had all it could handle cutting noxious weeds. The county balanced safety and economic considerations when it placed a low mowing priority on low-volume roads. The county's testimony describes the type of balancing that merits statutory immunity. *See, e.g., Matter of Heirs of Jones,* 419 N.W.2d 839, 842 (Minn.App.1988) (holding that decision not to salt roads to reduce county expenses was protected by statutory immunity because it involved the weighing of economic and safety considerations). Correspondingly, statutory immunity applies to the county's decision not to cut sight triangles at low-volume intersections like the one in this case.

■ The township is also entitled to statutory immunity on the issue of its failure to mow the intersection before the accident. Pursuant to its policy, the township began mowing in the fall, before the commencement of school. The accident in this case occurred in early August. The township's policy, therefore, is the reason that the intersection was not mowed. Furthermore, under this policy, the township removed only large items, such as trees, that interfered with or obstructed vision of warning signs. The stop sign at the intersection was visible. According to its policy, the township had no reason to mow the intersection prior to August 10, 1993. Statutory immunity protects the township's failure to mow the intersection.

The county's failure to mow the intersection before the accident is also protected by statutory immunity because of limited resources, prioritization of those resources, and other highway maintenance that precluded the county from mowing. The county must maintain hundreds of miles of county roads. Before the accident, the county attempted to mow the intersection in question but was unable to because of county road construction near the intersection. The county employee assigned to the intersection continued to mow other roads after he was unable to mow the intersection. After the road construction was finished, but before the county employee could return to the intersection, the accident occurred. If the county had an unlimited budget, it would be able to send numerous employees out to mow every intersection. However, as noted above, the county's budget is finite. In fact, it is fully extended in its effort to simply mow noxious weeds. The county's failure to reach the intersection before the date of the accident was the result of limited resources and safety considerations.

record demonstrates that it balanced limited resources with safety considerations: the township did not have its own mowing equipment or mowing personnel and it only mowed once per year. The township's creation of its policy, on its face, involved protected decision-making considerations. *See, e.g., Nusbaum* 422 N.W.2d at 722 n. 6 (where challenged conduct facially involves balancing policy objectives, government need not produce evidence of how decision is made); *see also Holmquist v. State,* 425 N.W.2d 230, 234 (Minn.1988) ("[A]doption of standards or regulations is considered a protected planning level activity because it almost inevitably requires the balancing of policy considerations.")

Respondents contend that they are not questioning the county's policy but rather the county's implementation of its policy. They claim that the county was negligent for not mowing the intersection between the date its employee attempted to mow it, and the date of the accident. There is nothing in the county's mowing policy, however, that requires the county to make numerous attempts to mow an otherwise unreachable area. Additionally, while there is testimony that the county attempts to make one cut on all roads by the first week in July, the county prioritizes high-volume roads over low-volume roads. In addition, the county recognizes numerous factors such as weather and maintenance of its mowers that can prevent its employees from meeting the July goal. We recognize that road construction is a factor, like weather, that can and did prevent the county from meeting its July mowing goal in this case.

The intersection in question was low-volume, and thus given low priority which, along with the road construction, substantially contributed to the county's failure to mow before the accident. Accordingly, we hold that statutory immunity applies to the county's failure to mow the intersection prior to the accident. In sum, we reverse the district court and hold that statutory immunity protects the township and the county as to the sight triangle and roadside mowing issues.

## II.

■ The township and county also challenge the district court's denial of summary judgment on the doctrine of official immunity. We review a district court's official immunity decision de novo. *Johnson v. State*, 553 N.W.2d 40, 45 (Minn.1996). Official immunity protects government employees who may be subject to liability due to the performance of their work duties. *Davis v. Hennepin County*, 559 N.W.2d 117, 122 (Minn.App.1997), *review denied*, (Minn. May 20, 1997). Official immunity protects an employee "from the fear of personal liability that might deter independent action." *Janklow v. Minnesota Bd. of Exam'rs for Nursing Home Adm'rs*, 552 N.W.2d 711, 715 (Minn.1996) (quoting *Elwood v. Rice County*, 423 N.W.2d 671, 678 (Minn.1988)). Official immunity traditionally protects individuals

and not a board acting in its joint capacity. *Id.* (holding official immunity did not apply where statutorily authorized board, not individual official, was responsible for alleged violation). In contrast to statutory immunity, official immunity involves the kind of discretion that is exercised on an operational level rather than a policy-making level. *Pletan*, 494 N.W.2d at 40.

The township and the county argue that official immunity should apply to the county engineer's and the township board's creation of the two government entities' mowing policies. The creation of a policy, however, is a planning level decision; it is not operational conduct. Accordingly, statutory immunity, not official immunity, applies to the creation of mowing policies. The carrying out of the mowing policies by county and township employees would be the proper focus of an official immunity analysis. *Cf. In re Alexandria Accident of February 8, 1994*, 561 N.W.2d 543, 549 (Minn.App.1997), *review denied* (Minn. Jun. 26, 1997) (holding that application of official immunity was proper where snow plow operator, in carrying out state's snow removal policy, had to make discretionary decisions such as speed to travel and type of equipment to use). The record does not reveal, nor do the township and county argue, that any government employee made a discretionary decision in carrying out the mowing policies. Further, the township argues only that the board should be immune. As previously stated, however, official immunity traditionally requires individual conduct. Accordingly, we affirm the district court's denial of summary judgment for the township and the county based on official immunity.

## III.

■ Lastly, the certified questions in this case apply only to the actions between the respondents versus the township and county, not between the respondents in their underlying suit. As such, the certified questions seek disposition of less than the entire action, a practice that the supreme court disfavors. *Emme v. C.O.M.B., Inc.*, 418 N.W.2d 176, 179 (Minn.1988). Because of *Emme* and because

of our decision on statutory immunity, we do not address the certified questions.

### DECISION

We reverse the district court and grant summary judgment to the township and county based on statutory immunity because their decisions regarding roadside mowing were based on protected planning level policies. We affirm the district court's decision denying summary judgment based on official immunity because the record does not support the application of official immunity to either the township or the county. In light of *Emme* and our statutory immunity decision, we do not address the certified questions. Lastly, because the question of liability between Goodwin and Riedel is unaffected by this decision, we remand for further proceedings.

**Affirmed in part, reversed in part, and remanded.**